" C ", Plaintiff, *v.* " C ", Defendant.[*]

Supreme Court, Special Term, Kings County, November 1, 1951.

*George E. Reynolds* for plaintiff.

*Jacques J. Katz* for defendant.

MURPHY, J. This is an action for divorce and for judgment declaring that the plaintiff is not the father of the child last born to the defendant. It is brought by the plaintiff husband based on the alleged adultery of the defendant wife, who has interposed a counterclaim for separation based upon plaintiff's abandonment and his failure to support the defendant and the infant issue of their marriage.

Upon the trial of the action, the plaintiff produced as his first witness Dr. Alexander S. Weiner, a blood grouping specialist,

[*] Names used herein are fictitious for the purposes of publication.

who testified as to his findings on a blood grouping test taken on November 21, 1950, pursuant to an order of this court. He tested the blood of the plaintiff husband, the defendant wife, and the infant child whose paternity is denied by the plaintiff husband. The doctor's report on his blood grouping test was admitted into evidence together with his interpretation of his findings. His report contains the following conclusion:

" Interpretation: The M-N, Rh-Hr, and P tests in this case are not informative, but the A-B-O tests prove that John C is not the father of baby Laura C.

" Since Louise C belongs to group A while her baby Laura C belongs to group B, Laura's father must belong to group B or group AB, but not to group O or group A. Therefore, John C who belongs to group A cannot be Laura C's father."

Dr. Weiner was subjected to a vigorous cross-examination by the defendant's attorney who sought to prove that there was a large element of chance in the manner in which the blood grouping test was made. The court is of the opinion, however, that the test was made by Dr. Weiner and his associates with great care and precision. This expert performed at least three retests in order to make sure that his conclusion was correct.

The plaintiff husband testified that the alleged offense by his wife was not committed by his procurement or through his connivance, that he had not forgiven the defendant for the alleged indiscretion, that he had not cohabited with her following his discovery of the alleged adultery, and denied that he had been guilty of any improper conduct on his own part.

In her own defense, the wife testified that she had not committed adultery, that the plaintiff was the father of her last born, and that he had cohabited with her on specific dates, which facts, if true, would indicate that the plaintiff was the father of the child.

The defendant also produced witnesses who testified that the plaintiff had made several visits to the defendant which would afford access. One of the defendant's witnesses was an eighteen-year-old daughter of the litigants who testified that she saw her father in bed with her mother on two occasions, once around Christmas of 1949 and in May, 1950. This would, if believed, tend to indicate that the plaintiff had cohabited with the defendant about the period of probable conception of the disputed child.

The husband's conduct is indeed not blameless. He has been incarcerated upon the order of the Domestic Relations Court as a result of his failure to support his wife and family. He has lived as a boarder with a divorced woman and her daughter

for a period of years, although no adulterous relationship has been proven in this situation. Under such circumstances, it is not easy for the court to grant him the relief which he here seeks. However, the blood grouping test is, in my opinion, conclusive in establishing that the plaintiff is not the father of the disputed issue. Our courts have long recognized the great weight which must be given to blood grouping tests which are scientifically conducted and objectively made by doctors expert in this field. The presumption of legitimacy is still strong in our law. It is not overcome except by very convincing evidence. Our Legislature has recognized that blood grouping tests, however, have reached the point of scientific acceptance and that their results may be received into evidence where definite exclusion is established (Civ. Prac. Act, § 306-a).

The plaintiff having sustained the allegations of his complaint by a preponderance of the credible evidence, judgment for divorce is granted to him, however lacking in admiration for him the court may be. Judgment is also granted in his favor declaring him not to be the father of the child in question. The defendant's counterclaim is dismissed, without costs. The plaintiff is directed, however, to continue to support the issue of his marriage with the defendant by paying to the defendant the sum of $30 a week.