## HARRISON v. DISTRICT OF COLUMBIA.
### No. 1299.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 16, 1953.

Decided March 20, 1953.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellant was charged in the Juvenile Court with being the father of an illegitimate child.[1] A jury found against him and after denial of a new trial judgment was entered on September 17, 1952, and the case continued to September 25 for entry of an order of support. On that date an order was made requiring appellant to pay $520 annually for support of the child.

■ The government questions the jurisdiction of this court to hear the appeal. Its contention is that the judgment of September 17 and the order of September 25 are each separate and appealable, that the appeal taken is directed at the judgment, and that notice of appeal, although timely as to the order, was not timely with respect to the judgment. With this contention we do not agree. We think the judgment and order together constitute the final and appealable judgment. The record does not disclose the form of judgment entered. All that is shown is "Judgment entered. Continued to 9/25/52 for entry of order." Whatever the form of judgment, its obvious effect could be nothing more than an adjudication that appellant is the father of the child. Such an adjudication was not the final and ultimate purpose of the proceeding. We find no authority for the Juvenile Court to entertain a proceeding merely to determine the paternity of an illegitimate child. The statute confers jurisdiction on that court of "Proceedings to establish paternity and provide for the support of a child born out of wedlock." Such a proceeding is not a criminal one intended to punish the father. Its ultimate object is to provide support for the child.[2] Before a man can be ordered to support a child either he must acknowledge his paternity or there must be an adjudication of his paternity. The adjudication that appellant

Belford V. Lawson, Jr., and Foster Wood, Washington, D. C., with whom Marjorie McKenzie and Robert I. Miller, Washington, D. C., were on the brief, for appellant.

Edward A. Beard, Asst. Corp. Counsel, Washington, D. C., with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and C. Belden White, II, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellee.

1. Public Law 917, Ch. 1225, 81st Cong., 2d Sess., approved January 11, 1951, 64 Stat. 1240. Apparently through inadvertence this law does not appear in the 1951 edition with Supplement I of the District of Columbia Code.

2. Dicks v. United States, D.C.Mun.App., 72 A.2d 34, 35.

was the father of the child was a necessary step to the order for support, but it did not accomplish the final aim of the proceeding. Our conclusion is that the appeal was timely taken.

Appellant's first claim of error relates to the testimony of a brother of the complaining witness. The brother testified he had been acquainted with appellant for a number of years and that after the birth of his sister's child he had a lengthy conversation with appellant; that appellant denied paternity of the child and referred to various letters he had received from complaining witness's attorney; and that appellant said "he would do what he could for the girl and would be willing to pay a thousand dollars to settle the matter."

 An offer to settle or compromise is not admissible against the party making it. One is permitted to make an effort to buy his peace without having such effort used against him as an admission of liability.[3] Here appellant denied paternity of the child but offered to pay a thousand dollars to settle the matter. This, we think, was clearly an offer of compromise and not an admission of liability. In McMahon v. Matthews, 48 App.D.C. 303, 308–309, it was said: "In its last analysis the question is, Did the defendant in making the offer admit liability? He said at the time that he did not. That denial inhered in each statement that he made. We cannot perceive any reason for holding that a proffer of settlement in which he denied liability had the effect of admitting what he denied."

 The trial court in its memorandum denying a new trial appeared of the opinion that the offer was admissible because it was not made either to the complaining witness or to her representative. We cannot agree with that reasoning. The offer in the instant case was not made directly to complaining witness but neither was it made to an utter stranger. It was made to the brother of complaining witness, who certainly had a personal interest in the matter and would reasonably be expected to report the offer to his sister. We see no practical or material difference between making the offer directly to complaining witness and making it to her through her brother. The identity of the one through whom the offer is made is not the decisive factor. What is controlling is the intention of the offerer as manifested by the form of his statement.[4] We think in this case the offer to pay in order to settle, prefaced by an absolute denial of liability, constituted a true offer of compromise and its character as such was not altered or destroyed because made indirectly to complainant through the medium of her brother.

 The government suggests that appellant's statement cannot be considered an offer of compromise because, it argues, section 12 of the Act under which the proceeding was brought requires that compromises in this type of case be approved by the Juvenile Court before release from further liability can be assured. As we read section 12, it has no application here. It is entitled, "Voluntary Acknowledgment of Paternity by Father," and provides that a putative father may enter into an agreement for support and maintenance of the child, which agreement may be submitted to the Juvenile Court for ratification and approval. In the instant case, appellant was not voluntarily acknowledging paternity of the child and he was not offering to support the child. He was denying paternity and offering a sum of money to settle a claim asserted against him. We are not required to determine what would have been the legal effect had such offer been accepted.[5] We are concerned with the offer itself and the rule against admissibility of an offer of compromise has generally been held applicable in this type of case.[6]

3. Firestone Tire & Rubber Co. v. Hillow, D.C.Mun.App., 65 A.2d 338; Hiltpold v. Stern, D.C.Mun.App., 82 A.2d 123, 26 A.L.R.2d 852.

4. Wigmore, Evidence § 1061 (3d ed.); McMahon v. Matthews, 48 App.D.C. 303; 31 C.J.S., Evidence, § 285(b).

5. See Williams v. Amann, D.C.Mun.App., 33 A.2d 633.

6. Graham v. State, 23 Ala.App. 331, 125 So. 200; People v. Gill, 247 Mich. 479, 226 N.W. 214; Olson v. Peterson, 33 Neb. 358, 50 N.W. 155; Kline v. State, 20 Ohio App. 191, 151 N.E. 802.

■ The foregoing necessitates the ordering of a new trial, but other points raised by appellant require some consideration. Testimony developed on the motion for new trial established that during the trial there was some conversation during a recess period between complainant and one of the jurors. We think the trial court was justified in finding that such conversation was innocent in nature and not prejudicial to defendant. Nevertheless any communication during the course of a trial between a juror and a party, witness or attorney in the case is to be condemned.[7] Trial courts may help prevent such incidents by warning each new group of jurors of the importance of avoiding any improper contact with counsel, parties or witnesses while cases are in progress.[8]

■ Appellant also complains that some, or all, jurors saw the complaining witness's baby in the hall or nursery outside the courtroom. The rule in this jurisdiction is that a child should not be exhibited to a jury for the purpose of establishing resemblance "unless there appear in the child physical characteristics peculiar to the father and unless the resemblance is so striking as to leave no reasonable doubt as to its existence." Thomas v. United States, 74 App.D.C. 167, 172, 121 F.2d 905, 910. If a child is not to be exhibited officially to a jury in the courtroom, it likewise ought not to be exhibited unofficially to jurors or some of them outside the courtroom. We realize that in some instances it is necessary that the mother bring the child to court with her but care should be taken to keep the child from the observation of the jury lest that which is prohibited from being directly done be indirectly accomplished.

■ Claim is made of error in cross-examination of one of appellant's character witnesses. This witness had testified that "before this matter came up I had never heard anything against him at all." On cross-examination he was asked: "Had you heard the defendant had been arrested and charged with assault on * * *?" Appellant's counsel objected to the question and asked the court to declare a mistrial. The court sustained the objection but refused to order a mistrial. We think not only was there no ground for declaring a mistrial but that the question was a proper one.[9] Appellant cites Wigmore's criticism of the rule permitting a character witness to be interrogated as to rumors of misconduct of the accused, but the Supreme Court, although conceding some merit to such criticism, has refused to follow it.[10]

■ Another claim of error relates to reception in evidence of the birth certificate of the child. Appellant offered it in evidence, but attempted to restrict the offer to the face of the certificate. On the government's offer of the whole document in evidence, it was received in its entirety. Appellant says this was error. The certificate, made out by the attending physician on information furnished him by the mother, gave the name of the father as Tyrone Barlow. On the face of the certificate, however, it was shown that the name of the child had later been changed from Barlow to Harrison, and on the back of the certificate was a statement by the physician to the effect that the mother of the child had informed him that the father was not Barlow but was Harrison. The record fails to show for what purpose appellant offered the front of the certificate, but the apparent purpose was to impeach complaining witness's testimony that appellant was the father of her child. We think there was no error in receiving the whole document in evidence. If part of a document is used to impeach a witness and other parts explain away or weaken the impeaching effect, the whole may be received in evi-

7. Ryan v. United States, 89 U.S.App.D.C. 328, 191 F.2d 779, Duncan v. U. S., certiorari denied, 342 U.S. 928, 72 S.Ct. 368, 96 L.Ed. 691.

8. Stover v. District of Columbia, D.C. Mun.App., 32 A.2d 536.

9. Josey v. United States, 77 U.S.App.D. C. 321, 135 F.2d 809.

10. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.

dence.[11] In this case the document actually did not impeach complaining witness. She had already testified that when the child was born she had told friends and acquaintances that the child's father was Tyrone Barlow. She explained this by saying that Barlow was the name of a fictitious person and she and appellant had agreed to give that name as the father of the child. The birth certificate therefore simply bore out complainant's testimony that she had originally stated that the father of the child was Tyrone Barlow and had later stated that appellant was the father.

The final claim of error appears to be that the evidence was insufficient to support a finding that appellant was the father of the child. We see no merit to this contention. If complaining witness's testimony is believed by a jury, it furnishes ample support for a finding against appellant.

Judgment reversed with instructions to grant a new trial.

11. Bernhardt v. City & S. Ry. Co., 49 App.D.C. 265, 263 F. 1009; Brink v. United States, 6 Cir., 60 F.2d 231, certiorari denied, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575; Evans v. Holsinger, 242 Iowa 990, 48 N.W.2d 250; State v. Brodt, 150 Minn. 431, 185 N.W. 645. See also Crawford v. United States, U.S.App.D.C., 198 F.2d 676.