**Clifford P. RETZER, Jr., Appellant,**

v.

**Marlene C. RETZER, Appellee.**

**No. 2532.**

Municipal Court of Appeals for the District of Columbia.

Argued April 4, 1960.

Decided June 7, 1960.

Jacob Gordon for appellant.

Paul J. Kasloff, Washington, D. C., with whom Harry L. Burlingame was on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellee wife brought suit for separate maintenance pursuant to the provisions of Code 1951, § 16–415. She asked for support money for herself and her four children who ranged in age from four months through six years old. The court awarded the wife $40 per week maintenance and support money, and custody of the children subject to reasonable visitation rights on the part of the father. This appeal is solely concerned with the finding by the court that appellant is the father of the youngest child.

The parties were married in 1951 and thereafter lived and cohabited intermittently with each other until May 4, 1958, when they finally separated; it was acknowledged that they had relations as late as this date. The child was born on February 19, 1959. During most of the intervening period the wife lived in an apartment rented for her by a married man who was seen visiting her there on a number of occasions, sometimes late at night. She gave the landlady this man's name as her married name, and her real married name as her maiden name. She denied ever having been unfaithful to her husband, but he denied the paternity of the child born to his wife.

At the pre-trial conference the court ordered blood grouping tests to be taken on

the husband, wife and child. Both parties agreed to submit to these tests. The results, put into evidence without objection, showed that appellant was excluded as the father of the child.

The court ruled that these results were entitled to evidentiary weight only. In view of the positive testimony of the wife that she had never had relations with any other man, and since the parties had cohabited during the critical period, the court felt that the results of the tests were insufficient to establish nonpaternity. We agree that but for the blood tests there is sufficient evidence to find appellant to be the father of the child. But the weight to be accorded blood grouping tests has not been presented heretofore in this jurisdiction, and whether they are to be considered as evidentiary only subject to whatever weight the trier of fact wishes to accord them, or whether they are to be regarded as conclusive proof of scientific fact is before us now for review.

One consideration is whether the common-law presumption of the legitimacy of a child born to a married woman is so strong in this jurisdiction as to be unassailable by the results of blood grouping tests. The tenacity of this presumption has been a long time in yielding, but it is clear today that a majority of jurisdictions hold it to be rebuttable. Harrington v. Harrington, D.C.Mun.App., 145 A.2d 121. In Peters v. District of Columbia, D.C.Mun.App., 84 A.2d 115, 118, this court listed several situations the "proper and sufficient showing" of which would effectively rebut the presumption. These were impotence, complete absence, absence during the period of conception, and presence but with clear proof of the lack of sexual intercourse. This was by no means an attempt to define the limits to which a husband may have recourse to prove nonpaternity, but was simply an indication of what courts have held to be sufficient in overcoming the presumption.

Some states now deem a determination of nonpaternity through blood tests to be an additional method of effectively rebutting the presumption. In those cases so holding the courts have at times based their findings on the conclusiveness of the tests. Cortese v. Cortese, 10 N.J.Super. 152, 76 A.2d 717; Anonymous v. Anonymous, 1 A.D.2d 312, 150 N.Y.S.2d 344; C v. C, 200 Misc. 631, 109 N.Y.S.2d 276. Others have said that the tests were of sufficient weight to support a finding of nonpaternity without the necessity of labeling them as conclusive or evidentiary. Groulx v. Groulx, 98 N.H. 481, 103 A.2d 188, 46 A.L.R.2d 994. In one case, State ex rel. Walker v. Clark, 144 Ohio St. 305, 58 N.E.2d 773, the court was reluctant to find the results of blood tests conclusive of nonpaternity. It was nevertheless willing to reverse a prior decision to the effect that the presumption of legitimacy was conclusive, and then accord enough evidentiary weight to the blood tests to hold them sufficient in overcoming the now rebuttable presumption.

There is authority to the contrary. The latest case to come to our attention is from California. Kusior v. Silver, Cal. App., 2 Cal.Rptr. 580, 587. In that case, however, the court was faced with a statutory presumption of legitimacy. The only exceptions allowed were the same as found in Peters v. District of Columbia, supra, and in spite of the fact that California had adopted the Uniform Act on Blood Tests to Determine Paternity the court was unable to reach the conclusion that the tests were sufficient in themselves to overcome the presumption. The reason for this was that the section making the tests conclusive had been omitted when the state legislature adopted the Uniform Act. The court conceded that the new act "negatives the possibility of another Arais v. Kalensnikoff [10 Cal.2d 428, 74 P.2d 1043, 115 A.L.R. 163] or Berry v. Chaplin [74 Cal. App.2d 652, 169 P.2d 442]" but decided that it did not permit the statutory presumption of legitimacy to be rebutted by the exclusionary results of blood tests.

We think the decision in Kusior is based purely on statutory interpretation. No sim-

ilar statute exists in this jurisdiction limiting the evidence which a husband may rely on to rebut the presumption of legitimacy. All that is required is that he make a proper and sufficient showing of nonpaternity and the presumption is dispelled. We believe the more enlightened view is represented by those jurisdictions which hold that this may be done by the results of blood grouping tests.

Returning to the question at hand, i. e., whether the results are to be deemed conclusive or evidentiary only, it is not necessary to set forth in detail the process by which the results are gained. These are detailed in 1 Wigmore, Evidence, § 165 (b) (3d ed., 1940), and 163 A.L.R. 939, 941–943.

It is enough to point out the underlying principle involved, that these tests are valid to disprove paternity only, and not to prove it. For instance, on the basis of the international blood group designations used here, A, B, AB, and O, the physician's report showed that the mother's blood was from group O, and the child's from group A; the father's blood must be from either group A or AB in order to transmit the A factor to the child, as it obviously did not come from the mother. Appellant has group B blood; hence the conclusion that he could not be the father of the child.

What is more important to the present discussion, and necessarily controlling, is the scientific reliability these tests enjoy when made accurately and carefully by competent personnel. From the authorities that we have studied we are convinced that medical science holds these exclusionary results to be absolutely determinative of nonpaternity. Gradwohl, Legal Medicine 524 (1954); Schatkin, Disputed Paternity Proceedings 225 (2d ed., 1947); Hooker, The Individualities of Human Blood 12–14 (1952); Harley, Medico-Legal Blood Group Determination 29–31 (1943); Hooker and Boyd, Blood-Grouping as a Test of Non-Paternity, 25 Journ. of Crim.

Law 187 (1934). One writer has aptly summarized the medical viewpoint as follows:

"[I]t is justifiable to state that the accuracy is extremely great, since not a single exception has been encountered in normal subjects among thousands of tests and since an explanation has been given of the irregularities that have occurred. The exclusion of paternity according to the A-B-O system, therefore, is as accurate as at all possible by a biological method. The possibility of mistaken exclusion is so remote that it can be disregarded." Andresen, The Human Blood Groups 47 (1952).

The recognition of the scientific accuracy of these tests has been evidenced in recent years by a growing number of cases which point directly to such reliability as an overwhelming fact that cannot be ignored. From a slow beginning—due in part to a reluctance against ousting the province of the trier of fact in favor of any conclusive evidence, however expert—there has been a growing realization by many courts that great injustice may be worked by failing to utilize exclusionary results when applicable. With science able to exclude the putative father in many cases, to refuse such aid in favor of the ability of the trier of fact to weigh all the evidence and emerge with a contrary and supposedly correct solution is, in the words of one case, "egregiously unrealistic." Commonwealth v. D'Avella, Mass., 162 N.E.2d 19, 21. The court in that case went on to say:

"The reliability of such tests to prove nonpaternity is well established as a scientific fact. Evidence which is regarded and acted upon every day as conclusive by skilled scientists outside of court ought not to be treated merely as some evidence (to be believed or disbelieved as the trier of fact sees fit) when it is adduced in court. We cannot close our eyes to the

overwhelming weight of scientific opinion on this subject and we take judicial notice of it."

The cases from other jurisdictions are to the same effect. Jordan v. Mace, 144 Me. 351, 69 A.2d 670; Clark v. Rysedorph, 281 App.Div. 121, 118 N.Y.S.2d 103; Commonwealth v. Coyle, 190 Pa.Super. 509, 154 A.2d 412. In Ross v. Marx, 21 N.J. Super. 95, 90 A.2d 545, 546, the court said:

> "It is universally accepted in medical and scientific fields that the result of a blood grouping test disproving paternity * * * is not an expression of opinion upon which experts can differ but, rather, is the statement of a scientifically established fact. * * * As such it should be accepted by the courts of law. For a court to declare that these tests are not conclusive would be as unrealistic as it would be for a court to declare that the world is flat."

Though this precise issue has not been before the courts of this District until now, we do not think that we are without domestic guides in arriving at our decision. Congress has given the Juvenile Court of the District of Columbia power to order blood tests to be taken in illegitimacy actions to determine if the defendant "can be excluded as being the father of the child." Code 1951, 11–956 (Supp. VIII). There would be considerable doubt, in view of the statute, whether the Juvenile Court could disregard test results which showed exclusion. If Congress intended the results to be conclusive there, as we think it did, then demonstrable scientific fact should be no less conclusive before the Domestic Relations Branch. The fact that only the Juvenile Court is specifically referred to in the statute merely reflects the fact that the Domestic Relations Branch already has the power to order physical examinations under its rules, whereas the Juvenile Court possessed no such power prior to the statute.

Also indicative of the course which we should follow is Beach v. Beach, 72 App. D.C. 318, 114 F.2d 479, 480, 131 A.L.R. 804. The question there was whether the trial court was correct in ordering blood grouping tests to be taken under Rule 35 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The court held that the tests underlay the issue of paternity and consequently were "in controversy" within the meaning of that Rule, and the order was affirmed. The court at that time briefly reviewed the history of these tests and noted that the "value of blood grouping tests as proof of nonpaternity is well known. * * * although such tests cannot prove paternity, and cannot always disprove it, they can disprove it *conclusively* in a great many cases provided they are administered by specially qualified experts." (Emphasis supplied.)

The integrity of the tests are not disputed here. Accordingly, we are of the opinion that the trial court erred in not deeming the exclusionary results as conclusive of nonpaternity. The cause is remanded for redetermination of the amount of support money for the wife and children whose paternity is not in question, and for further proceedings not inconsistent with this opinion.

It is so ordered.