**Benjamin Leon HAWKINS, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 3488.**

District of Columbia Court of Appeals.

Argued June 1, 1964.

Decided Aug. 28, 1964.

Shellie F. Bowers, with whom Carlisle E. Pratt, Washington, D. C., was on the brief, for appellant.

Ted D. Kuemmerling, Asst. Corporation Counsel, with whom Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Hubert B. Pair, Asst. Corporation Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

This appeal is from a jury verdict in the Juvenile Court of the District of Columbia finding appellant to be the father of two minor children born out of wedlock. 16 D.C. Code § 2341 et seq. (Supp. III, 1964).

Ten years ago in a paternity proceeding we had occasion to say:

"* * * This is the familiar setting of a charge of paternity by the Government and a denial by the putative father.

"It would serve no useful purpose to set forth in detail the conflicting testi-

mony because the law is clear that where there is a direct conflict in the evidence the question is one for the trier of the facts and not for this court." Harrison v. District of Columbia, D.C.Mun.App., 103 A.2d 204 (1954).

■ This reflects the posture of the law as it exists today and would be dispositive of appellant's case except for what we consider prejudicial error in the exclusion of certain evidence affecting the credibility of the natural mother of the two children here involved.

■ On March 13, 1959, the natural mother executed three complaints alleging under oath that appellant was the father of three of her children. Blood grouping tests requested by appellant established that he was excluded as the father of one of the children. The government dismissed as to that child and went to trial on the complaints involving the other two children.

During the hearing appellant made a proffer of the testimony of Dr. Oscar B. Hunter who had conducted the blood grouping tests. Objection by the government was sustained to any testimony by him relating to the results of the tests which had excluded appellant as the father of the third child.[1] The government argues that even though the proffered testimony of Doctor Hunter might have discredited the complainant before the jury, the prejudice from admitting such evidence—its tendency to blacken the character of the complainant—

outweighed its probative value, relying on Myers v. Blackman, D.C.Mun.App., 130 A. 2d 590 (1957).[2]

We do not believe that the admission of the results of the blood grouping tests which excluded appellant as the father of the one child would be unduly prejudicial to the natural mother in her actions seeking support for the other two children, particularly as we point out later, when this evidence is submitted to the jury under proper instructions. As we stated in Lee v. District of Columbia, D.C.Mun.App., 117 A.2d 922, 923 (1955):

"If [the mother] had previously stated that the father was unknown, appellant was entitled to have the jury consider this in judging her credibility. When one is charged with being the father of an illegitimate child, determination of the truth of the charge is usually dependent to a great degree on the credibility afforded the testimony of the mother and the alleged father. *Evidence directly bearing upon the credibility of either ought not to be excluded.*" [Emphasis added.]

Although the record in the instant case reveals some confusion in the views of counsel for both parties and the trial judge respecting the proffer of the testimony of Doctor Hunter, it is clear that the sole purpose of his testimony would have been to impeach the credibility of the natural mother and that such proffer was at no time withdrawn or abandoned.[3] By its exclusion

---

1. Retzer v. Retzer, D.C.Mun.App., 161 A.2d 469, 470.

2. This was a civil action for injuries sustained by plaintiff in an automobile collision. There we upheld the admission of testimony by police officers relating to the physical condition and conduct of plaintiff in the course of two arrests without subsequent convictions because the officers' testimony was relevant to the extent of injuries claimed. We pointed out that although as a general rule evidence of arrests without subsequent convictions may not be used for impeachment purposes in either civil or criminal

cases, it is admissible if relevant to a material point, and whether evidence of this character might create such undue prejudice in the jurors' minds as to outweigh its probative value is a determination which must rest largely with the discretion of the trial judge.

3. Record, pp. 105–106:
"Mr. Pratt: * * * I would like to make this proffer of the testimony of Dr. Hunter.
"The Court: As Mr. Pratt indicates, the action on his motion to take judicial notice of the blood test did extend to a

appellant lost any benefit he may have derived, for impeachment purposes, by being able to show that although the mother had originally charged him with being the father of three of her children, he had been excluded as father of one of them.

To avoid any misconception as to the sole purpose of the testimony of Doctor Hunter, an appropriate instruction by the trial judge, to the effect that this testimony is to be considered *only* in assessing the credibility of the natural mother and is not probative of whether appellant is the father of the other two children, would go far in eliminating any undue prejudice to the mother and still preserve such testimony for appellant's benefit.

However, as we stated in the Lee case, supra, the complaining witness may explain why she made the accusation that Hawkins was the father of this child. Whether her explanation is persuasive is a matter for the jury, but the subject is open to explanation and exploration by both sides. To have deprived appellant of any benefit he might have derived from the admission of the blood grouping tests for the one child with whose paternity he had originally been charged was prejudicial error.

> rejection of the proffer now offered by Mr. Pratt.
>
> "Mr. Pratt: Was your ruling of what you would take judicial notice of conditioned upon my withdrawing my position on my proffer?
>
> . "The Court: No."

As the foregoing necessitates that a new trial be granted, we consider other claims of error which might arise again.

■ Appellant contends that the trial judge, in instructions to the jury, erroneously shifted the burden of proof to him. He concedes he entered no objection to the jury charge and did not suggest any amendments to cure the alleged error which is raised for the first time on appeal.[4] Because of the importance of having the jury fully understand where the burden of proof rests, we have examined the charge. Taking the true meaning of the instruction as a whole,[5] we find there was no shifting of the burden of proof to appellant and the jury was correctly advised that the burden was upon the government to prove its case by a preponderance of the evidence.

■ We also suggest that the trial judge in a paternity proceeding involving more than one child should instruct the jury that paternity as to each child must be found separately and that they may find from all the evidence that the defendant is the father of one child although not of the other.

Reversed and remanded for a new trial.

4. Moses v. District of Columbia, D.C.Mun. App., 129 A.2d 402, 403 (1957).

5. Carey v. United States, 111 U.S.App. D.C. 300, 296 F.2d 422 (1961); Roberts v. United States, 109 U.S.App.D.C. 75, 284 F.2d 209 (1960), cert. denied 368. U.S. 863, 82 S.Ct. 109, 7 L.Ed.2d 60.