**Fred Walker JOHNSON, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 5240.

District of Columbia Court of Appeals.

Argued July 21, 1970.

Decided Dec. 7, 1970.

Peter A. Hornbostel, Washington, D. C., with whom Lawrence J. Latto, Washington, D. C., was on the brief, for appellant.

Thomas R. Nedrich, Asst. Corp. Counsel, with whom Hubert B. Pair, Acting Corp. Counsel at the time the brief was filed, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before FICKLING, GALLAGHER, and NEBEKER, Associate Judges.

PER CURIAM:

This is an appeal from a judgment rendered in a paternity proceeding in the Juvenile Court.

■ Appellant, the alleged father of an illegitimate child, first contends that the court erred in denying his pre-trial motion to take complainant's deposition. We have

ruled that such procedures are not available in paternity proceedings. In re Ketcham, D.C.App., No. 2716 Original (unreported order, June 26, 1964). We are not now persuaded to question that ruling. Under the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, § 111 (§ 11–946), 84 Stat. 473, 487, discovery proceedings may be available to the parties in paternity proceedings after February 1, 1971.

Additionally, appellant argues that the court mistakenly applied the preponderance of the evidence standard of proof where it should have called for proof beyond a reasonable doubt. Recognizing that in District of Columbia v. Turner, D.C.Mun. App., 154 A.2d 925 (1959), we held that the reasonable doubt standard was not applicable to paternity proceedings, the appellant urges that In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), overturns our decision. We disagree.

■ In both *Winship* and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court was concerned with juvenile proceedings which were essentially criminal in nature. Despite the fact that paternity proceedings are conducted in Juvenile Court and have some of the procedural trappings of the criminal process,* they are essentially civil in nature. District of Columbia v. Turner, *supra.* These proceedings are initiated for the financial benefit of an illegitimate child. There is no attempt to affect or reform anyone's behavior, and any loss of liberty is not a direct consequence of these proceedings. We do not feel that the considerations which motivated the Court in both *Winship* and *Gault* are present in paternity proceedings.

Affirmed.

NEBEKER, Associate Judge (dissenting):

The predicate for my disagreement with the majority is the way in which I read In re Winship, 397 U.S. 358, 90 S.Ct. 1068 (1970), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428 (1967). To me, those cases logically extend to paternity procedures presently conducted under D.C.Code 1967, § 16–2341 et seq.[1]

Prior to trial in 1969, counsel for appellant requested the trial judge to apply the standard of proof beyond a reasonable doubt. The trial judge, relying on previous decisions of this court,[2] refused to apply that standard and expressly found appellant to be the father of the child in question on the preponderance standard.[3]

---

* These trappings are expressly removed by the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No.91–358, 84 Stat. 544, which is effective February 1, 1971.

1. That type of proceeding has been completely changed under Sec. 121, (§ 16–2341 et seq.) of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No.91–358, 84 Stat. 473, 544. All trappings of existing criminal character are removed, and the nature of the proceeding is expressly civil. That provision of the Act, however, becomes effective in February, 1971.

2. Hawkins v. District of Columbia, D.C. App., 203 A.2d 116 (1964); Jackson v. District of Columbia, D.C.App., 200 A. 2d 199, 201 (1964); District of Columbia v. Turner, D.C.Mun.App., 154 A.2d 925

(1959). In District of Columbia v. Turner, *supra* at 927, *citing* Bragg v. District of Columbia, D.C.Mun.App., 98 A.2d 784, 785 (1953), we did, however, speak of the legal sufficiency of uncorroborated testimony in terms of "clear and convincing." This observation is significant in light of the Supreme Court's subsequent decision in Woodby v. Immigration Service, 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), *cited in* In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068 (1970), relating to the standard of proof in deportation proceedings.

3. The trial judge was "slightly more" of the view that appellant was the father. He also expressed his evaluation of the testimony as amounting to "a slightest tipping of the scales" in favor of the prosecution.

Appellant now argues that the subsequent decision in *Winship, supra,* requires application of the reasonable doubt standard in this paternity proceeding. He recognizes and the District of Columbia argues that *Winship* dealt only with a juvenile court delinquency proceeding. However, as appellant observes, the Supreme Court relied heavily on In re Gault, *supra,* in rejecting what it referred to as "the 'civil' label-of-convenience which has been attached to juvenile proceedings" to justify a lesser standard of proof. 387 U.S. at 50, 87 S.Ct. at 1455. That Court also rejected any attempt to "justify the preponderance standard on the related ground that juvenile proceedings are designed not to punish, but to save the child." In re Winship, 397 U.S. at 365, 90 S.Ct. at 1073. Appellant also accurately observes: "[C]ivil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts" where the defendant may suffer a loss of liberty if the verdict is against him. In re Winship, 397 U.S. at 365–366, 90 S.Ct. at 1073.

Therefore, it seems to me in our disposition of this issue, we cannot be governed by basic social or legal purpose of the proceedings [4] any more than by a label used as a shorthand description.[5] We must look to the nature of the proceedings and the consequences arising from its commencement and determination.

Appellant correctly points out that paternity proceedings are begun as a "prosecution upon information." D.C.Code 1967, § 16–2342. If necessary the "accused" may "be arrested and brought before the court." D.C.Code 1967, § 16–2345. Prior to trial, the "accused" may be committed to jail in lieu of bond. D.C.Code 1967, § 16–2346. Presumably, however, the Bail Reform Act of 1966, 18 U.S.C. § 3146 (Supp. V, 1969), *et seq.,* governs the setting of bail. *Cf.* Hoffman v. United States, 131 U.S.App. D.C. 201, 403 F.2d 927 (1968), applying that Act to an extradiction proceeding.

I also see trappings of criminal process in these paternity proceedings because, in lieu of giving security to guarantee payments, appellant was placed "on probation to the court on condition that payments be made", and in default "the court may revoke probation and commit the defendant to jail" for no more than one year at a time. D.C.Code 1967, § 16–2350. To assume, as the majority does, that incarceration would not be a direct consequence of these proceedings is, I submit, unreal. Subsequent inability or refusal to pay may be the immediate cause of going to jail, but, as in a criminal case involving a fine, it is the underlying factual adjudication which is the primary causative factor in loss of liberty.

The District of Columbia argues that such commitment power is limited to the Juvenile Court's general contempt authority under D.C.Code 1967, § 11–1581. That section, however, limits punishment to $200 or six months or both. Of course, a trial for contempt not committed before the court must be afforded the contemner if charged under that provision. But to the contrary, no trial in a strict or formal sense is available to one who defaults in support payments ordered from paternity proceedings. Stevens v. District of Columbia, D.C. Mun.App., 127 A.2d 147 (1956). Indeed, the only issue on revocation of probation is whether the court abused its discretion. Stevens v. District of Columbia, *supra.* It is thus apparent that appellant would be given no new hearings on facts found at the paternity hearing by a mere, and in this case by the "slightest", preponderance of the evidence. Accordingly, he may be deprived of his liberty for up to one year on facts found by a preponderance of the evidence and which would not have been so found under the stricter standard.

Of course, I realize that commitment may occur in a case where an alimony or support order arises from a divorce proceeding or from other civil proceedings

---

4. Harrison v. District of Columbia, D.C. Mun.App., 95 A.2d 332, 333 (1953).

5. *See* note 2, *supra.*

where the preponderance standard unquestionably applies. Therefore, it would seem that the possibility of subsequent incarceration is not necessarily and exclusively the determinative factor.

As I understand it, the considerations which led to the holdings in *Winship, supra,* and In re Gault, *supra,* included the nature of the proceedings from their beginning, the status or potential status of liberty during the proceedings and afterward, and the effect of the adjudication in the form of "stigma". The Supreme Court, in *Winship,* 397 U.S. at 363, 90 S.Ct. 1068, spoke of stigma resulting in a finding of violations of a criminal law. In a paternity proceeding the critical fact is whether an illegal act of sexual intercourse resulted in birth out of wedlock. Whether that determination is viewed as a violation of an unused criminal statute or not it unquestionably can have broad and serious stigmatic ramifications for the adjudicated father. We have earlier recognized these consequences as "definitely of criminal overtone." District of Columbia v. Turner, D.C.Mun.App., 154 A.2d 925 (1959).

I would, therefore, hold that as to the present case, where the trial court was asked to apply the stricter standard of proof and stated that if the law so required it would find for the accused, the decision in *Winship, supra,* requires entry of a finding in his favor. To the extent that our previous decisions are in conflict, I view them as overruled by *Winship.*

As noted, the proceedings in this case took place before the decision of the Supreme Court in *Winship.* Accordingly, the trial judge then correctly applied the existing law. Since, however, application of the stricter standard relates to a serious flaw in,[6] or the integrity of,[7] the fact-finding process, I believe it must be applied to this case. *See also* In re Ellis, 429 F.2d 214 (D.C.Cir., 1970), applying *Winship* to earlier juvenile court delinquency proceedings in

which the point was preserved for review. Moreover, since the trial judge expressly found in favor of appellant on the reasonable doubt standard, I see no occasion to consider applicability of the harmless constitutional error standard. *See* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967). Accordingly, I would reverse with instructions to enter judgment for appellant.

---

6. Robert v. Russell, 392 U.S. 293, 294, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

7. Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).