In the Matter of H. M., J. M., K. M.

In the Matter of H. P. M., J. A. M., K. A. M.

Nos. 12191, 12243.

District of Columbia Court of Appeals.

Argued April 26, 1978.

Decided May 19, 1978.

Robert S. Catz, Washington, D. C., appointed by this court, for appellant (father).

Jean R. Bower, Washington, D. C., for appellees.

Before MACK and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

■ This is an appeal from an amended order in a child-neglect proceeding permanently terminating a natural father's visitation rights. Because such permanent termination violates the statutory provision limiting "dispositional orders" initially to two years, subject to one-year extensions after notice and hearing, D.C.Code 1973,

§ 16–2322, we vacate the order and remand the case to the trial court.

### I.

The appellees, minor children whose mother is deceased, have been adjudged "neglected children," D.C.Code 1973, § 16–2301(9), on the ground that their father, the appellant, had engaged in sexual activity with them and arranged to have it photographed. (Appellant had pleaded guilty to taking indecent liberties with a minor, D.C. Code 1973, § 22–3501, and had been placed on probation for one to three years.) On September 23, 1974, the court placed the children in the custody of their maternal grandmother, D.C.Code 1973, § 16–2320(a)(3)(C), for a period not to exceed two years, D.C.Code 1973, § 16–2322(a)(2), and granted appellant "reasonable rights of visitation . . . subject to approval of social worker." Subsequently, the court denied a petition by appellant for unsupervised visitation rights.

On December 13, 1976, appellees filed a "motion to rescind visitation rights," alleging that their father's visits have had a "deleterious effect" on them. In a supporting affidavit, the maternal grandmother requested withdrawal of the "rights of visitation *until* such time as the children show an active interest in knowing and seeing their father once again" (emphasis added). Appellees' proposed order provided for cessation of visitation rights "*until* evidence is presented to [the] court that the children's feelings have changed and they would welcome the opportunity to see [appellant]" (emphasis added). At a hearing on the motion on December 29, 1976, counsel for appellees stated to the court: "I am asking for a cessation . . . a *temporary* cessation of visitation rights" (emphasis added). At that time the court granted the

motion to rescind visiting rights, pending issuance of a written order. The court also extended the maternal grandmother's custody until September 23, 1977.

Despite appellees' clear request solely for a temporary withholding of appellant's visitation rights, the court entered the following order on March 31, 1977:

1. The Court terminates the parental rights of the father, that is for the protection of the children and not as punishment for the father.

&ast; &ast; &ast; &ast; &ast; &ast;

3. That visitation rights for the father are hereby permanently denied.

&ast; &ast; &ast; &ast; &ast; &ast;

5. That placement for the children shall be with the grandmother . . . until further order of the Court.

On April 4, 1977, the court sua sponte amended paragraph 1 of the order to read as follows: "1. That the paternal visitation rights are terminated." Without question, therefore, by virtue of paragraphs 1 (as amended) and 3 of this order, the trial court has permanently barred appellant from visiting his children, the appellees, although the order no longer purports to terminate all parental rights.

### II.

■ As appellees themselves have recognized, D.C.Code 1973, § 16–2322(a)(2) limits their maternal grandmother's initial award of custody to two years, subject to extensions of up to one year at a time pursuant to D.C.Code 1973, § 16–2322(c).[1] It follows that any order ancillary to such award of temporary custody, such as an order limiting a parent's visitation rights, is subject to the same time limitations.

This conclusion is buttressed by a recent decision of our court, *In re C.A.P.,* D.C.

---

1. D.C.Code 1973, § 16–2322(a)(2) provides:

(2) An order vesting legal custody of a child in an individual other than his parent shall remain in force for two years unless sooner terminated by order of the [Family] Division.

D.C.Code 1973, § 16–2322(c) provides:

(c) Any other dispositional order [than one pursuant to subsection (b) vesting legal cus-

tody in an agency or institution] may be extended for additional periods of one year, upon motion of the Director of Social Services, if, after notice and hearing, the [Family] Division finds that extension is necessary to protect the interest of the child.

App., 356 A.2d 335 (1976). There, we held that the neglect statute, as then in effect (and in effect on April 4, 1977, the date of the court's amended order here), could not serve as a basis for a Superior Court rule authorizing permanent termination of parental rights. Such termination could only be accomplished in connection with an adoption proceeding. See White v. N. E. M., D.C.App., 358 A.2d 328 (1976).[2] Permanent termination of visitation rights, of course, is not the equivalent of a termination of parental rights altogether, for a parent also has the right, for example, to consent to adoption and to determine religious affiliation, as well as a concomitant responsibility to provide for a child's support. Nevertheless, because the right to visitation—the right to be with one's child—is the preeminent parental right, the gloss of In re C.A.P., supra, is heavy on the neglect statute (as in effect on April 4, 1977), precluding serious argument that the court had authority to terminate parental visiting rights permanently, except as part of the total termination of parental rights in an adoption proceeding.

### III.

There is, however, an additional consideration. As indicated in note 2, supra, Title IV of the Prevention of Child Abuse and Neglect Act of 1977 (the "Act"), effective September 23, 1977, amends Chapter 16 of the D.C.Code by adding a new Subchapter II, § 16–2351 through § 16–2365, to provide for termination of all parental rights in a neglect proceeding, not only as part of an adoption proceeding as required by In re C.A.P., supra.[3] In addition, the Act adds a new § 16–2323 to provide more procedural safeguards governing review of dispositional orders.

Appellees do not contend that the Act permits permanent termination of parental visitation rights (in contrast with termination of all parental rights). Thus, they do not argue that the trial court's order of March 31, 1977 (as amended April 4), has been cured retroactively by the advent of the new Act. We would leave it at that, except that the trial court, in considering future dispositional orders in this case, may confront the question whether the Act permits an order similar to the one at issue here. We believe it would be unwise, therefore, if we were to ignore this question about the Act's application.

We note that the Act does not provide for permanent termination of parental visiting rights, as such. Nor does it amend § 16–2322 prescribing time limitations on dispositional orders. Accordingly,

2. Effective September 23, 1977, Title IV of the Prevention of Child Abuse and Neglect Act of 1977, entitled the "Neglect Proceedings Amendment Act of 1977," substantially amended Chapter 16 of the D.C.Code, including provision in a new Subchapter III, § 16–2351 through § 16–2365, for termination of parental rights in neglect proceedings (unrelated to an adoption).

3. This new Subchapter III was a direct response to In re C.A.P., supra. According to the March 29, 1977, report of the D.C. City Council Committee on the Judiciary on Title IV of the bill creating the Act:

> The remedy of termination of parental rights in the context of only adoption proceedings has proven inadequate for freeing the many children whose long-term needs are not adequately being served by foster care. The adoption proceeding route requires that the Department of Human Resources find for each neglected child who should be freed adoptive parents who are willing to under-

take not only the uncertainty of whether they will be ruled as qualified adoptive parents (an uncertainty all adoptive parents must undergo) but also the uncertainty of whether the child they have decided upon will be freed for adoption (an uncertainty most adoptive parents do not have to undergo). These adoptive parents must bear not only the cost and burden of proof of a simple adoption, they must bear the cost and burden of proving that termination is in the child's best interests—both of which burdens are substantial. Moreover, as opposed to a simple adoption, the prospective parents must assume an active adversary role with the child's parents. Not only is it undesirable to have to rely on this as the only method of freeing children for adoption, but it also does not work—as indicated by those 65 children, whom the Department of Human Resources estimates should be freed for adoption but for whom no such remedy exists in the law. [Id. at 7–8.]

we see nothing in the Act that would modify our conclusion under the law prior to the Act's passage, namely that in child neglect proceedings dispositional orders concerning termination of parental visitation rights, as such, are subject to the time limitations in D.C.Code 1973, § 16–2322. Enactment of a new procedure for permanently terminating all parental rights, in order to facilitate adoption (*see* note 3, *supra*), does not imply authority of the court to order permanent termination of fewer than all parental rights, such as the right to visitation. Such partial, permanent termination would fail to serve the very purpose of Subchapter III of the Act. We conclude, on the basis of the statutory language and legislative history, that Subchapter III of the Act does not authorize permanent termination of parental visitation rights, as such.

## IV.

Accordingly, we hold that the court erred in barring appellant's visitation rights beyond the time limitations in D.C.Code 1973, § 16–2322. We vacate paragraphs 1 and 3 of the court's order of March 31, 1977, as amended on April 4, 1977, and remand the case for further proceedings. In addition, we are entering an order to preserve the status quo for a period of thirty days to enable the parties and the court to address the current situation.

We should add, finally, that because appellant's visitation rights are to be relitigated as a result of our order and because, in any event, the review of a dispositional order under the neglect statute always requires a fresh look, the Act is fully applicable to all subsequent proceedings in this case.

*So ordered.*