**Starla Jean FELDER, Appellant,**

v.

**Ralph N. ALLSOPP, Appellee.**

No. 12360.

District of Columbia Court of Appeals.

Submitted March 15, 1978.

Decided Aug. 17, 1978.

Rehearing and Rehearing En Banc Denied Oct. 18, 1978.

Thurman L. Dodson, Washington, D. C., with whom Eugene M. Beckford, Washington, D. C., was on brief, for appellant.

Matthew W. Black, Jr., Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.

Opinion for the Court by NEWMAN, Chief Judge.

NEWMAN, Chief Judge:

This is an appeal by the mother of a minor child, Ralph Latae Allsopp, from an order of the trial court finding paternity, awarding visitation rights, and requiring payments for support of the child in an action brought by the putative father. Appellant contends on appeal: (1) the trial court lacked jurisdiction to entertain the action below because appellee failed to bring his cause of action prior to the running of a jurisdictional time limitation; (2) the trial court erred in making a finding of paternity and permitting visitation where the child's best interest would not be served thereby; and (3) the trial court erred by not appointing independent counsel for the child.[1] We affirm.

1. Independent counsel may be appointed at the discretion of the trial court. In this case, such an appointment was requested only after the close of testimony. There is no indication in

■ Appellant contends that appellee's action failed to meet jurisdictional time limitations imposed by D.C.Code 1973, § 16–2342. Section 16–2342 provides in pertinent part: [2]

> Proceedings . . . to establish parentage and provide for the support of a child born out of wedlock may be instituted after four [4] months pregnancy, or *within two [2] years after the birth of the child*, or within one year after the putative father or mother, as the case may be, has ceased making contributions for the support of the child. [Emphasis supplied.]

Since the child was born on January 21, 1974, and appellee's action was not instituted until April 14, 1977, over three years after the birth of the child, his action would be barred if the time limitation in § 16–2342 applies. Section 16–2342 is applicable by its terms to parentage and support proceedings brought under D.C.Code 1973, § 11–1101. In the case of a parent suing to establish paternity in order to enforce a support obligation, filing within this time limit is a jurisdictional prerequisite. *Lindsay v. District of Columbia*, D.C.App., 298 A.2d 211 (1972).

■ Appellee contends, however, that the statute is not applicable to the type of proceeding with which we deal here. We agree. The jurisdiction of the trial court over this action stemmed from the general equitable powers of the Superior Court, *see* D.C.Code 1973, § 11–921(a), rather than from § 11–1101. Appellee sued to establish the right to visitation, in essence an equitable domestic relations action, such as an action for custody or divorce. This action does not involve an impermissible one mere-

ly to establish parentage, *Harrison v. District of Columbia*, D.C.Mun.App., 95 A.2d 332 (1953), nor does appellee seek to enforce on anyone a duty of support. Rather, parentage is here a relationship that must be proved solely in order to allow a proper consideration of the request for visitation rights. This court would hardly deny a forum to enforce such visitation rights on behalf of the married parent of a child living apart from the spouse with whom the child resides. The sole jurisdictional basis for such an action where neither divorce nor custody is at issue would be the general equity jurisdiction of the trial court. *See generally* D.C.Code 1973, § 11–1101. We cannot here deny a forum to the unwed parent of a child seeking visitation rights without raising the specter of a denial of equal protection. *See Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971). As we have said, "the right to visitation—the right to be with one's child—is the preeminent parental right . . . ." *In re H.M., J.M., K.M.*, D.C. App., 386 A.2d 707, 709 (1978). All of the normal equitable doctrines (*e. g.*, laches or unclean hands) will be available to the defending party in the determination of visitation rights.

■ Appellant argues that it would be inconsistent to bar women from bringing suit but not to bar men similarly, especially since the District's Anti-Sex Discriminatory Language Act [3] has made § 16–2342 parentage proceedings equally applicable to both mothers and fathers. We see no such inconsistency. A mother seeking visitation rights in the case of a child born out of wedlock and left in the care of the putative father would be free to bring such an action without bar from § 16–2342.

the record that the interests of the child were not adequately represented to the court by all counsel, and failure to appoint a guardian ad litem does not deny the child due process of law. *See Beckwith v. Beckwith*, D.C.App., 355 A.2d 537 (1976). The argument is thus without merit.

2. Despite recent changes in the District of Columbia family law, *e. g.*, Act of Oct. 1, 1976,

D.C.Law No. 1–87, these time requirements have remained virtually unchanged since the enactment of the predecessor of the present law, Act of June 18, 1912, ch. 171, § 2, 37 Stat. 134, codified at D.C.Code 1929, § 18–282.

3. Act of Oct. 1, 1976, D.C.Law No. 1–87.

■ The duty to support, which is the underlying purpose for the proceedings, is distinct from the *right* to visitation; the former arises *automatically* upon establishment of parentage by sufficient proof. *See* D.C.Code 1977 Supp., § 30–320. We hold that the jurisdiction of the trial court in this case arose from its general equity jurisdiction and that the time limitations of § 16–2342 are not applicable.

■ We turn now to the second of appellant's allegations: that the trial court erred in permitting visitation because the best interest of the child would not be served thereby. Appellant argued in the trial court and now argues on appeal that visitation by the natural father at this late date would intrude into the child's world, which for three years has consisted of the mother and her husband, and be detrimental to the child's best interest.

The trial court after considering these arguments found "[t]here was not one scintilla of evidence presented to indicate to the Court any reason, other than the desires of the Defendant, to refuse this father visitation with his child." The trial court's findings as to the best interest of the child were carefully considered and based upon firsthand observation and evaluation of the evidence and credibility of the parties involved. We are bound by these findings and must affirm unless they are plainly wrong or without evidentiary support. D.C.Code 1973, § 17–305(a). On this record, we cannot so hold.

*Affirmed.*

HARRIS, Associate Judge, dissenting:

If the trial court had jurisdiction over the proceeding which was *before* it, I *would* share my colleagues' belief that its action should be affirmed as being neither plainly wrong nor without evidence to support it. *See* D.C.Code 1973, § 17–305(a). However, I agree with appellant-mother that jurisdiction over the subject matter was barred by statute. Accordingly, I respectfully dissent.

A brief digression is necessary to comment upon terminology. For years, Subchapter II of Chapter 23 of Title 16 of the District of Columbia Code (like its predecessor statutes when jurisdiction over such matters was vested in the former Juvenile Court) was captioned "Paternity Proceedings." Similarly, § 16–2342 of the Code dealt with proceedings "to establish paternity and provide for the support of a child born out of wedlock . . . ." This, of course, was both logical and typical of comparable statutory provisions elsewhere. Biologically, men father babies; women have them. It would be an extraordinary case (*e. g.,* an infant abandoned on a hospital's steps) in which the identity of a child's mother is unknown; it is regrettably far from uncommon for the identity of a child's father to be uncertain.

The City Council enacted an Anti-Sex Discriminatory Language Act (D.C.Law No. 1–87) which became effective October 1, 1976. In part, it changed the caption of Subchapter II from "Paternity Proceedings" to "Parentage Proceedings," and changed the nomenclature of proceedings covered by the limitation period of § 16–2342 from ones "to establish paternity" to ones "to establish parentage." No comparable change was made (nor could it have been) in D.C.Code 1973, § 11–1101(11). It provides that the Family Division of the Superior Court has exclusive jurisdiction over "proceedings to determine paternity of any child born out of wedlock." [1]

1. Subsection 11 of § 11–1101 is distinct from subsection 3 thereof, which relates solely to "actions to enforce support of any person as required by law."

It should be noted that the City Council does not have the authority to effect any change in Title 11 of the District of Columbia Code, which relates to the organization and jurisdiction of the District of Columbia courts. *See* D.C.Code 1977 Supp., § 1–147(a)(4).

The pleading which initiated this proceeding in the trial court was entitled "Petition To Determine Paternity and Enforce Visitation Rights." The jurisdictional basis for the action specifically was stated to be § 11–1101 of the Code. D.C.Code 1977 Supp., § 16–2342, which is captioned "Time of bringing complaint," now provides in pertinent part that:

> Proceedings over which the [Family] Division has jurisdiction under paragraphs (3) and (11) of section 11–1101 to establish parentage and provide for the support of a child born out of wedlock may be instituted after four months of pregnancy or within two years after the birth of the child  .   .  . .

That particular statute of limitation apparently was not specifically called to the attention of the able trial judge, who, after a hearing, found appellee to be the father of the child and provided for visitation rights.[2]

In this case, as is so often true, the birth of an illegitimate child has lingering traumatic effects upon both its mother and its father. There is room for sympathy for both parents: for the father, who after years of inattention now desires to establish a parental relationship with his young son, and for the mother, who after having raised her baby through the first three years of his life has restructured her life (including marriage to another man) and is anxious that it not be disrupted. The mother also fears that the belated and unanticipated intrusion of the father into the child's narrow world would be detrimental to the child's interests.

This case obviously is unusual. Here we do not have a mother seeking a judicial determination of the identity of her child's father, but rather a father seeking such a ruling. Unquestionably the principal purpose of the statutes permitting the bringing of a paternity action is to protect a mother and her child (and, collaterally, the state, upon which the burden of support so often falls), enabling the mother to establish the identity of the father and to establish a duty of support. However, as to the statute which provides a time limitation for the bringing of such an action, other factors are relevant. Memories of the parties and other possible witnesses inevitably dim. More importantly, assuming that the parents stay apart, each will go on to make for himself or herself a new life—lives which, at some point, should be free of the spectre of a possible paternity action. These reasons underlay the legislative adoption of a two-year statute of limitation for the initiation of an action to establish "parentage" (the term used in the amended § 16–2342 of the Code) or "paternity" [the term used in § 11–1101(11)].

The father, like the mother, readily could have begun an action for a judicial determination of paternity within two years after the baby's birth. He did not; he voluntarily permitted more than three years to pass. He thus ran inescapably afoul of § 16–2342's two-year limitation period. In my view, the trial court accordingly lacked jurisdiction over the subject matter and the "Petition To Determine Paternity and Enforce Visitation Rights" should have been dismissed.

The majority sees the case differently. It concludes that § 16–2342 "is not applicable to the type of proceeding with which we deal here." The reason given: "The jurisdiction of the trial court stemmed from the general equitable powers of the Superior Court, see D.C.Code 1973, § 11–921(a), rather than from § 11–1101. Appellee sued to establish the right to visitation, in essence an equitable domestic relations action, such as an action for custody or divorce."

I invite any interested reader to make a cursory comparison between § 11–921(a) of

---

2. There was, however, no waiver of the statute of limitation; the mother's opposition to the "Petition To Determine Paternity and Enforce Visitation Rights" stated in part that "petition-er is guilty of laches and also barred by the Statute of Limitations which is being pleaded herein as an affirmative defense."

the Code (which was enacted essentially to prescribe the timetable for transition to the enlarged jurisdiction of the Superior Court pursuant to the Court Reform Act of 1970) and § 11–1101(11). The former is irrelevant; the latter—specifically relied upon by the father in his petition—expressly confers jurisdiction on the Family Division of the Superior Court in "proceedings to determine paternity of any child born out of wedlock."

The granting of visitation rights in an appropriate case may or may not be "equitable" in nature, as contended by the majority, but that is beside the point. Our appellee is not entitled to, and could not be awarded, visitation rights without a prior determination of his paternity. That is why he sought and obtained the trial court's ruling that he is the father. I do not see how it can be seriously questioned that an effort by a particular man to be declared the father of a particular child constitutes seeking a remedy at law, and that the unequivocal limitation period of § 16–2342 is applicable thereto (unless, of course, the statute of limitation is waived by the defending parent, which did not happen here).[3]

The majority effectively writes § 16–2342 out of the Code for a father who seeks, at any time, to establish his paternity. Presumably the majority would continue to recognize its validity for a mother who wishes to establish the paternity of her child, as the mother virtually invariably would have custody of the child. In my view, the judicial sleight of hand by which the majority relieves fathers from compliance with the statutory limitation period (i.

e., the underlying paternity determination disappears, leaving only the visitation question in view) raises a serious equal protection question to which I now merely allude but upon which I shall not now elaborate.[4]

Thus, I am convinced that the remedy which appellee sought pursuant to § 11–1101(11) was required by § 16–2342 to have been commenced within two years of the baby's birth. His waiting for more than three years before filing his petition should preclude his receiving the relief sanctioned by the majority. Accordingly, I respectfully dissent.

---

3. It will be recalled that § 16–2342 refers to actions "to establish parentage and provide for the support of a child born out of wedlock." In *Harrison v. District of Columbia*, D.C.Mun. App., 95 A.2d 332 (1953), our predecessor court concluded that there then was no authority for the former Juvenile Court "to entertain a proceeding merely to determine the paternity of an illegitimate child." *Id.*, at 333. Thus, it formerly was necessary for a request for support to accompany a petition to determine paternity. However, § 11–1101(11) of the Code (enacted in 1970) provides for a paternity action without

reference to support. Nonetheless, to be safe, our appellee stated in his petition that he was "ready, willing, and able to contribute to the financial support of the minor child herein."

4. The majority purports to find a spectre of an equal protection issue to support its position, briefly discussing visitation problems between married parents who are living apart. Such a position has no merit, for in such situations there is no question as to paternity and hence no statute of limitation. Here, paternity was the crux of the case.